**UNITED STATES of America,**

v.

**The OAKFORD CORPORATION, William Killeen, Thomas Bock, John R. D'Alessio, Thomas J. Cavallino, Edward J. Mueger, John Saverese, and Mark Saverese, Defendants.**

**No. S2 98CR144 (JSR).**

United States District Court,
S.D. New York.

Sept. 8, 1999.

Douglas R. Jensen, United States Attorney's Office, S.D.N.Y., New York City, for the Government.

Richard Greenberg, Gustave Newman, Newman Schwartz & Greenberg, New York City, for Oakland Corp., William S. Killeen.

Francis Murray, Murray & McCann, Rockville Center, NY, for Thomas W. Brock.

Dominic F. Amorosa, New York City, for John D'Alessio,

Victor J. Rocco, Gordon Altman Butowsky Weitzen Shalov & Wein, New York City, for Thomas J. Cavallino.

Michael Armstrong, Kirkpatrick & Lockhart, L.L.P., New York City, for Edward Mueger.

Benjamin Brafman, Brafman, Gilbert & Ross, P.C., New York City, for John J. Savarese.

Robert Katzberg, Kaplan & Katzberg, New York City, for Mark Savarese.

## MEMORANDUM ORDER

RAKOFF, District Judge.

In order to prevent floor brokers on the New York Stock Exchange from taking unfair advantage of their specialized position, federal law prohibits such brokers from effecting securities transactions for their own account, an account in which they have a financial interest, or an account as to which they exercise investment discretion. *See* 15 U.S.C. § 78k(a) and various rules and regulations promulgated thereunder. On May 20, 1999, shortly before the scheduled start of trial in this case, all the above-named defendants except John R. D'Alessio entered guilty pleas to Count One of the instant indictment, which charged them with conspiring to violate these laws and others. In their plea allocutions, however, the defendants affirmatively admitted only to agreeing to execute securities trades in the name of defendant Oakford Corporation without always obtaining prior orders from Oakford, in violation of the prohibition against discretionary trading. The pleas, moreover, were entered pursuant to letter agreements with the Government that stipulated, in each case, that "there is no reasonable basis for calculating the defendant's gain, if any, that resulted from [these] Discretionary Trades."

If accepted by the Court (which is in no way bound by these letter agreements), the putative effect of this unusual stipulation would be to treat the defendants for sentencing purposes as having realized virtually no gain whatever from their misconduct, a seemingly problematic result. Accordingly, the Court, before accepting the guilty pleas, expressly advised the parties that it had doubts about this stipulation and that, before imposing sentence, the Court might require an evidentiary hearing to explore the factual basis for this and other related factual stipulations proffered by the parties.

Subsequent to the guilty pleas, the Probation Office prepared draft Presentence

Investigation Reports (the "Reports"), copies of which, although not publicly available, were furnished to the parties and have now been furnished to the Court. The Reports conclude in effect that, contrary to the proffered stipulations, the financial gains from the defendants' misconduct can be reasonably calculated and amount to very substantial sums that will have a material effect on sentencing.

In response, the parties argue that the proffered stipulations should be accepted, and no evidentiary hearing convened, because the Reports wrongfully measure financial gain, not on the basis of the occasional Oakford trades that the brokers executed entirely on their own, but on the basis of the more common Oakford trades that the brokers executed after telephonic conversations with Oakford representatives. In essence, they argue, the Reports confuse discretionary trades, which are illegal for floor brokers, with solicited trades, which are not.

However, while the traditional distinction between discretionary and solicited trades is of undoubted relevance to this case, the parties' argument premised upon it misconceives the thrust of the argument put forth by the Probation Department in the Reports. The thrust of Probation's analysis, as the Court understands it, is that the perfunctory communications between Oakford and the defendants on which the parties purport to rely, and, indeed, the entire arrangements between Oakford and the brokers, were a sham and a subterfuge, designed to purposely evade compliance with the applicable laws while giving the illusion of compliance. Thus, even though the law prohibits floor brokers from trading in their own accounts, the brokers here, according to Probation, not only initiated virtually all the trades in certain Oakford accounts that were specially assigned to them but also received as much as 90% of the profits generated in these accounts by the device of denominating the receipts as "commissions." Likewise, even though the law prohibits floor brokers from maintaining a financial interest in their customers' accounts, some of the brokers here, according to Probation, arranged to make "loans" to Oakford prior to their initiation of trading in the "Oakford" accounts specially assigned to them. Further still, even though the law prohibits floor brokers from exercising investment discretion with respect to their customers' accounts, the brokers here, according to Probation, commonly made their brief telephone calls to Oakford not for the purpose of obtaining Oakford's agreement to the trades, but simply as a cover for the brokers' untrammeled exercise of their own discretion. Thus, Probation's view appears to be that the entirety of the trades executed by the defendants in Oakford's accounts falls within the ambit of the Count to which they pleaded guilty, or that, even on the parties' more narrow terms, the entirety of such trading constituted unlawful discretionary trading that was simply disguised to appear as lawful solicitation.

Needless to say, the defendants strenuously dispute these insinuations. But the Court can hardly determine which view has merit without holding an evidentiary hearing, since any such assessment requires both a more detailed factual record of exactly what occurred than anything presently before the Court and also a more nuanced analysis of the defendants' intentions than anything the Court can undertake without further inquiry. Moreover, it is now apparent to the Court that, even if, as the parties assert, financial gain or loss cannot adequately be measured, the Court must then consider whether the resulting guideline calculation does not fully capture the seriousness of the misconduct, so that an upward departure is nevertheless warranted. *See, e.g.,* U.S. Sentencing Guidelines, § 2F1.1, Application Note 11.

Accordingly, the Court will convene an evidentiary hearing, as previously scheduled, at 9:00 A.M. on September 21, 1999 in Courtroom 14–B, 500 Pearl Street, New York, New York, to consider the issues

raised above and any other issues bearing on sentencing. Counsel should expect the hearing to commence promptly and to last as late as 5 P.M., with an hour break for lunch. The parties are free to produce for testimony any person they believe may have helpful evidence, provided that any party intending to call any such witness must previously notify the Court and counsel of the names of all such witnesses, by letter telecopied to Chambers and counsel, no later than 2:00 P.M. on September 14, 1999. Additionally, the Government shall produce at hearing for possible questioning by the Court the following persons: Christine A. Beyer, Michael Frayler, Richard Harman, Angelo Meneghello, Maxwell Lown, and an official of the New York Stock Exchange having knowledge of its relevant rules and practices and who also can testify as to customary commissions charged by New York Stock Exchange floor brokers in the time periods here relevant.

SO ORDERED.